# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

ANDREA JO KUNIK,

              Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

No. C13-3025-LTS

**MEMORANDUM OPINION
AND ORDER**

_____

Plaintiff Andrea Jo Kunik seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Kunik contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, the Commissioner's decision is reversed and remanded for further proceedings.

## *Background*

Kunik was born in 1966 and completed college with a nurse aide certificate. AR 32, 135. She previously worked as a cashier, production helper and nurse assistant. AR 329. Kunik protectively filed for DIB on September 3, 2010, alleging disability beginning on January 1, 2009, due to post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), attention deficit disorder (ADD), depression and bipolar disorder. AR 11, 196. Her claims were denied initially and on reconsideration. AR 71-72. Kunik requested a hearing before an Administrative Law

Judge (ALJ). AR 92. On July 26, 2012, ALJ Thomas Donahue held a hearing via video conference during which Kunik, Kunik's boyfriend, and a vocational expert (VE) testified. AR 29-70.

On August 10, 2012, the ALJ issued a decision finding Kunik was not disabled since January 1, 2009. AR 11-22. Kunik sought review of this decision by the Appeals Council, which denied review on April 29, 2013. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On May 20, 2013, Kunik filed a complaint in this court seeking review of the ALJ's decision. On June 25, 2013, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to me for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted.

## *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to

meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the

burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *Summary of ALJ's Decision*

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

(2)    The claimant engaged in substantial gainful activity during the following periods: January 2009 through the end of June 2009 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

(3)    However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

(4)    The claimant has the following severe impairments: obesity, bipolar disorder; posttraumatic stress disorder; and social phobia (20 CFR 404.1520(c)).

(5)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(6)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) lifting and carrying 25 pounds frequently and 50 pounds occasionally, sitting or standing two hours at a time for six hours of an eight-hour day, and walking two miles. Additionally, she is limited to a low stress level, such as a level "4" on a scale where "10" is the most stressful and "1" is the least stressful. Moreover, she may have no contact with the general public and

> limited contact with fellow workers. Finally, the claimant is limited to simple, routine to less than complex tasks.
>
> (7)　The claimant is capable of performing past relevant work as a production helper, Dictionary of Occupational Titles number 529.686-070. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (8)　The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of this decision (20 CFR 404.1520(f)).

AR 13-22. At Step One, the ALJ found Kunik had engaged in substantial gainful activity (SGA) from January through June 2009, but because there had been a continuous 12-month period where she had not engaged in SGA, he could proceed to the second step. AR 13. At Step Two, the ALJ found Kunik's severe impairments consisted of obesity, bipolar disorder, posttraumatic stress disorder and social phobia. AR 14. Although Kunik had also alleged back and hip pain and residual effects of a right wrist fracture, the ALJ found these were not severe because they were not medically determinable impairments. *Id.*

At Step Three, the ALJ found that Kunik's mental impairments considered singly and in combination did not meet or equal the criteria of Listings 12.04 and 12.06. He first analyzed the "paragraph B" criteria, which require two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.[1] *Id.* A "marked" limitation is one that is more than moderate but less than extreme. The ALJ

---

[1] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

found that Kunik had mild restriction in activities of daily living and moderate difficulties in social functioning and concentration, persistence or pace. AR 14. Kunik had not experienced any episodes of decompensation of extended duration. Therefore, the "paragraph B" criteria were not satisfied. He also considered the "paragraph C" criteria, but found that the evidence failed to establish those criteria, as well. *Id.*

At Step Four, the ALJ conducted his RFC assessment and found Kunik was capable of performing medium work, sitting or standing two hours at a time for six hours of an eight-hour day and walking two miles. She was also limited to a low stress level, such as a level "4" on a scale where "10" is the most stressful and "1" is the least stressful. She could have no contact with the general public, limited contact with fellow workers and was limited to simple, routine to less than complex tasks. AR 15. As part of his RFC assessment, the ALJ evaluated the credibility of Kunik's allegations and found them to be not entirely credible. He reasoned there was no objective evidence supporting most of her alleged physical symptoms, no therapy records and sparse psychiatric treatment. AR 17. He also noted success with medications for her mental symptoms and found that her reported activities and abilities were "indicative of a functionality well beyond that which the claimant contends." *Id.*

In support of his reasoning, the ALJ first described Kunik's alleged thigh and back pain. *Id.* He found they were not medically determinable impairments because there is no objective evidence of diagnosable conditions. *Id.* While a consultative examiner stated that Kunik had limited range of motion in her spine and right lower extremity, the ALJ noted these findings were based on Kunik's subjective reports of pain. He also discredited these symptoms based on Kunik's failure to pursue treatment throughout the relevant period of alleged disability.

The ALJ next considered Kunik's obesity and noted that a treating physician had stated that her physical symptoms of discomfort were "most likely related to her weight gain and pressure." *Id.* The ALJ found Kunik's obesity was a medically determinable impairment that caused significant limitations. AR 18. He stated that all restrictions

provided in the RFC accounted for these limitations. The ALJ noted this finding was primarily based on Kunik's activities of daily living. *Id.* While Kunik had described difficulties walking up and down stairs, the ALJ noted she had demonstrated an ability to stand on her feet for extended periods of time and bend and squat without difficulty. He also noted that many of her activities such as getting dressed, bathing, feeding herself, going to the bathroom, feeding pets, playing with grandchildren, cooking, cleaning and doing laundry demonstrated a greater level of functionality than she had alleged. *Id.* The record even contained evidence that Kunik had gone roller skating with her family during the alleged period of disability. *Id.* The ALJ concluded these activities suggested Kunik could perform medium work and her obesity did not require further accommodation.

Kunik alleged she was unable to lift a gallon of milk due to the effects of a wrist fracture she suffered in June 2010. However, Kunik had surgery on her wrist and the post-operative treatment records suggested she had fully recovered within 12 months of her injury. AR 18. She was released to full activities in September 2010 and the ALJ did not find any evidence of treatment for the alleged residual side effects following her surgery. The ALJ found Kunik's wrist pain was non-severe, noting that the lack of treatment as well as her release to full activities just three months after the injury strongly suggested that any remaining symptoms would only have a minimal effect on her ability to work. AR 19.

As for limitations related to her mental impairments, the ALJ first noted that outside of a few references before her alleged onset date, the first reference to treatment for her mental impairments occurred in October 2010, well after her alleged onset date. In October 2010, Kunik reported to the emergency room with depression and suicidal thoughts. She stated that she was not taking any medication and had not taken any since 2002. She was admitted for three days and testing showed indications of symptom exaggeration. The psychologist noted she "may be magnifying problems in a help seeking or perhaps some other secondary gain." *Id.* The ALJ also noted that

Kunik failed to follow up with a mental health provider after her discharge until 2011 when she again reported to the emergency room for suicidal ideation. *Id.* Kunik was still not taking any medications at this time, but once she was placed on medications at the hospital, her mood stabilized and she was discharged. *Id.* Since then, the ALJ found no further evidence of mental health treatment. Based on her lack of compliance with medication or therapy recommendations and her failure to seek any further treatment, the ALJ found her mental impairments did not cause greater limitations than those provided in the RFC. *Id.*

In further support of the mental limitations in the RFC, the ALJ referenced Kunik's daily activities and the findings of a psychological consultative examiner. He specifically noted Kunik's statement that she would go shopping three to four times per week for up to two hours at a time, would play with her grandchildren and went roller skating with her family. He found she had moderate difficulties in social functioning and limited her to no contact with the public and limited contact with co-workers. The consultative examiner found she had no more than moderate difficulties in concentration, persistence and pace. AR 20. The ALJ adopted similar limitations into the RFC.

The ALJ noted there was no opinion evidence from a treating source, but he did consider the third party function report and testimony of Kunik's boyfriend and the third party function report from her ex-husband. *Id.* He discredited their opinions for the same reasons he discredited Kunik's allegations, specifically citing the lack of objective supporting evidence, Kunik's sparse treatment and their close relationship with Kunik.

The ALJ concluded Kunik was capable of performing her past relevant work as a production helper. *Id.* In the alternative, he found that she would be able to perform the work of a kitchen helper, janitor or laundry folder based on her age, education, work experience and residual functional capacity. AR 21. For these reasons, the ALJ

found Kunik had not been under a disability from January 1, 2009, through the date of the decision.  AR 22.

### *The Substantial Evidence Standard*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645.  The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v.*

*Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### Discussion

Kunik makes two arguments in contending the ALJ's decision is not supported by substantial evidence:

I.    The ALJ Failed to Fully Develop the Record

II.   The ALJ Failed to Reference or Discuss Any Medical
      Records After May 17, 2011

### I.    Development of the Record

Kunik contends the ALJ did not fully develop the record relating to PTSD. She points out that she requested a second consultative examination to address this issue, but the request was denied despite indications in the record that she suffers from this impairment. Kunik contends that the limitations related to PTSD are not fully accounted for in the RFC.

The Commissioner disagrees, pointing out that the first psychological consultative examiner Kunik saw in April 2011 diagnosed PTSD and that the ALJ found this to be a severe impairment. The ALJ also referenced Kunik's PTSD in discussing her treatment records. The Commissioner argues the ALJ was not required to develop the record further because the record was sufficient for him to determine Kunik's limitations from all of her mental impairments.

An ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

The ALJ considered PTSD to be a severe impairment. He noted that Kunik claimed to experience flashbacks and have nightmares from some type of trauma associated with living with her sister when her parents had become ill and died. AR 16. To account for her PTSD and other mental health symptoms, the ALJ included limitations of low stress work, minimum contact with the public, limited contact with co-workers and simple, routine to less than complex tasks in the RFC. AR 15.

I find that the ALJ adequately developed the record relating to Kunik's PTSD. Kunik was sent to a consultative examiner in April 2011, who diagnosed her with PTSD. He recommended certain work-related limitations based on the symptoms from all of her mental impairments. AR 437-39. The ALJ adopted many of the recommendations from this report which included limitations in remembering and understanding instructions, procedures and locations, maintaining attention, concentration and pace and interacting appropriately with supervisors, co-workers and the public. AR 439. The fact that the record was insufficient to meet Kunik's burden

of proving she could not perform her past work does not mean the record was insufficiently developed. *See Kisling v. Chater*, 105 F.3d 1255, 1257 n.3 (8th Cir. 1997) ("The record itself . . . is sufficiently developed; the documents and testimony simply fail to support Kisling's claims."). The ALJ did not err by failing to obtain additional medical evidence relating to PTSD because the record was sufficiently developed for the ALJ to determine whether Kunik's impairments (singly and in combination) were disabling.

## II.    *Evaluation of Medical Evidence and Kunik's Credibility*

Kunik argues the ALJ ignored certain medical records in discrediting her subjective allegations and that those records support her claim of disability. She contends the medical records from Spencer Municipal Hospital demonstrate that she sought mental health treatment after her hospitalization in May 2011, contrary to the ALJ's finding. She also disputes the ALJ's characterization of her treatment history as a fairly recent development. Finally, Kunik contends that a document submitted to the Appeals Council from her current treating psychiatrist supports her claim of disability.

The Commissioner argues that neither the records from Spencer Municipal Hospital or Kossuth Regional Health Center support Kunik's allegations of disabling mental limitations, meaning that the ALJ did not err in failing to discuss them. Moreover, the Commissioner contends that the ALJ's decision is supported by substantial evidence even when considering the additional evidence that was submitted to the Appeals Council.

The records Kunik references in Exhibit 18F from Spencer Municipal Hospital are dated June and July 2010, refer to treatment regarding her fractured wrist and are not relevant to her mental health treatment. AR 486-93. However, records in Exhibits 20F and 21F from Kossuth Regional Health Center which date from June 2011 through July 2012, are relevant to her mental health treatment. AR 511-20, 523-24. These exhibits were in the record at the time the ALJ made his decision. AR 28.

Because the ALJ did not discuss these records, I will summarize them here. The records show that on June 14, 2011, Kunik saw Burt Bottjen, M.D., and Kim Etherington, PAC, to establish medical care. AR 524. Kunik was still struggling with depression since she had been discharged from the hospital in May and her medications were adjusted. *Id.* On July 20, Kunik was doing well on her medication and the provider noted she was happier, motivated and pleasant. AR 523. Her boyfriend had also noticed her improvement. *Id.* On September 15, Kunik was feeling depressed and her medication was increased. AR 520. A week later, she stated that the increase in medication had made her feel more anxious, aggressive and agitated. AR 519. Her medications were adjusted again. *Id.* On October 27, Kunik still experienced anxiety, agitation and irritability. AR 518. She thought her depression was okay, but not as well-controlled. *Id.* She had been going to counseling on a regular basis which seemed to help. In December 2011, Kunik was doing well on her medications and the doctor noted her bipolar disorder was stable. AR 515. In January 2012, Kunik felt that her depression was not well-controlled again and her medication was increased. AR 514. In April, Kunik reported she had not felt well for several weeks. She was overwhelmed, stressed, agitated and had trouble sleeping. AR 513. Her medication was adjusted. *Id.* In June, Kunik was still not doing well, partly due to stress from the sudden death of her brother and other family issues. The doctor adjusted her medications again. AR 512. In July 2012, Kunik stated she felt as though her moods were still not controlled. AR 511. The doctor noted she was not taking one of her medications twice per day as instructed. Kunik was asked to make this change and follow up in a month. *Id.*

Kunik argues this evidence refutes the ALJ's credibility finding, which was based in part on her purported failure to seek additional treatment following her hospitalization in May 2011. Moreover, Kunik argues these records support her claim of disability. An ALJ's failure to discuss medical evidence does not necessarily constitute error. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("An

ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). A deficiency in opinion-writing is also not a sufficient reason to set aside an ALJ's finding, however, "inaccuracies, incomplete analysis, and unresolved conflicts of evidence can serve as a basis to remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000)).

It is obvious that the ALJ failed to consider the mental health records in Exhibits 20F and 21F, as he inaccurately stated that Kunik "has had no further mental health treatment" since her hospitalization in May 2011. AR 19. He went on to use this as a reason to discredit her stating: "Considering her lack of compliance with medication or therapy recommendations—or any treatment for that matter—the undersigned finds little evidence that the claimant's psychological symptoms require greater accommodation than provided by the above-listed residual functional capacity assessment." *Id.* This reason for discrediting Kunik is not supported by substantial evidence and demonstrates the ALJ failed to meet his duty of considering all relevant evidence in the record. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("It is the ALJ's responsibility to determine [claimant's] RFC based on all the relevant evidence, including medical records, observations or treating physicians and others, and [claimant's] own description of her limitations.") (internal quotations omitted). If the evidence at issue was not relevant, remand would not be required. Here, however, the overlooked evidence is plainly relevant to Kunik's claim and the ALJ actually used the perceived lack of such evidence as a reason to discredit Kunik's credibility. Under these circumstances, I must remand this case for the ALJ to consider the impact of this relevant, overlooked medical evidence.

The ALJ also failed to seriously consider numerous records that pre-date Kunik's alleged onset date. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations

are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."). The ALJ stated, "With the exception of a few references before the alleged onset date, the claimant's only treatment for mental health symptoms occurred well after the alleged onset date." AR 19. To the extent the ALJ discredited Kunik based on a belief that she had a short and recent history of mental health treatment, this reason is not supported by substantial evidence in the record as a whole. Mental health treatment records pre-dating Kunik's alleged onset date demonstrate she has a long history of diagnosed mental illness. AR 330-31, 510, 527-28, 534-53. Indeed, this long history has been acknowledged by Kunik's more-recent treating providers. AR 520, 524. Kunik regularly received mental health treatment from 2000 to 2002, and it appears she stopped treatment and her medication due to financial reasons in 2002. AR 510. I find that remand is necessary for the ALJ to fully consider this historical medical evidence as well.

Kunik's remaining argument addresses evidence that was not a part of the record when the ALJ made his decision, but was later submitted to the Appeals Council. The regulations describe the review process for new and material evidence as follows:

> [T]he Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). If the Appeals Council considers the new evidence, but declines to review the case, the court reviews the ALJ's decision to determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Browning v. Sullivan*, 958 F.2d 817, 823 n.4 (8th Cir. 1992).

Here, the new evidence consists of a one-page form signed by Mark Lassise, M.D., Kunik's current treating psychiatrist, on September 24, 2012. AR 556. The form was submitted by Kunik in her application to discharge her federal student loan. *Id.* The form does not note any limitations except "[i]mpaired due to chronic mental illness." *Id.* It also notes Kunik had a GAF score of 24 on May 12, 2011. *Id.* I find that this evidence, by itself, would not even arguably warrant remand. However, because I must remand this case for the ALJ to consider overlooked medical evidence, the ALJ shall also consider the new evidence in evaluating Kunik's RFC and credibility and issuing a new decision.

## *Conclusion*

For the reasons set forth herein, the Commissioner's determination that Kunik was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings. Judgment shall enter in favor of the plaintiff and against the defendant.

On remand, the ALJ shall re-evaluate Kunik's RFC and credibility after considering (a) all of the evidence in Exhibits 20F and 21F, (b) the medical records pre-dating Kunik's alleged onset date and (c) the form completed by Dr. Lassise, in conjunction with the rest of the evidence in the record. Depending on this new evaluation, the ALJ may need to obtain additional VE testimony before issuing a new decision on Kunik's claim.

**IT IS SO ORDERED.**

**DATED** this 27th day of January, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE